UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| TONY DOUGLAS, | ) |
|     Plaintiff, | ) |
| vs. | )    Case No. 4:15 CV 685 ACL |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of Social Security, | ) |
|     Defendant. | ) |

## MEMORANDUM AND ORDER

Plaintiff Tony Douglas brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Social Security Administration Commissioner's denial of his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act and Supplemental Security Income ("SSI") under Title XVI of the Act. Douglas alleged that he was disabled because of vision problems, spine problems, hearing loss, memory problems, anxiety, depression, breathing problems, and stomach problems/possible ulcers. (Tr. 296.)

An Administrative Law Judge (ALJ) found that Douglas has several medically determinable impairments, but does not have a severe impairment or combination of impairments and is not, therefore, disabled.

This matter is pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c). A summary of the entire record is presented in the parties' briefs and is repeated here only to the extent necessary.

## I. Procedural History

Douglas protectively filed applications for DIB and SSI on March 12, 2012, claiming that he became unable to work due to his disabling condition on January 30, 2012.[1] (Tr. 251-57, 258-63). Douglas' claims were denied initially. (Tr. 139-43.) Following an administrative hearing, Douglas' claims were denied in a written opinion by an ALJ, dated December 30, 2013. (Tr. 74-91.) Douglas then filed a request for review of the ALJ's decision with the Appeals Council of the Social Security Administration (SSA), which was denied on February 27, 2015. (Tr. 73, 2-4.) The Appeals Council indicated that it had considered additional evidence received after its decision, but it did not provide a basis to set aside its decision.[2] (Tr. 1.) Thus, the decision of the ALJ stands as the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481.

In the instant action, Douglas claims that the ALJ erred in "[f]ailing to find the Plaintiff met the Grids for his advanced age (59 years), lack of transferable skills, and combination of impairments." (Doc. 14 at 1.)

## II. The ALJ's Determination

The ALJ found that Douglas met the insured status requirements of the Social Security Act through December 31, 2016, and that he has not engaged in substantial gainful activity since January 30, 2012, his alleged onset date. (Tr. 79.)

In addition, the ALJ concluded that Douglas' anxiety, history of head injury, mild

---

[1] Douglas amended his alleged onset of disability date to March 4, 2012 at the administrative hearing. (Tr. 99.)
[2] This evidence consists of medical records of treatment received after the ALJ's decision, from August 2014 through January 2015 (Tr. 11-72); and a list of Douglas' 2014 prescriptions (Tr. 6-10.) None of this evidence, therefore, pertains to the relevant time period.

degenerative and congenital changes in the lumbar spine and history of a healed compression fracture in the thoracic spine, history of Bell's palsy[3] affecting the right side of the face, and hyperlipidemia were medically determinable impairments. (Tr. 79.) The ALJ found that Douglas did not have an impairment or combination of impairments that has significantly limited or is expected to significantly limit his ability to perform basic work-related activities for twelve consecutive months. (Tr. 80.) The ALJ therefore concluded that Douglas does not have a severe impairment or combination of impairments. *Id.*

The ALJ found that Douglas has not been under a disability, as defined in the Social Security Act, from January 30, 2012, through December 30, 2013. (Tr. 91.)

The ALJ's final decision reads as follows:

> Based on the application for a period of disability and disability insurance benefits protectively filed on March 12, 2012, the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act.
>
> Based on the application for supplemental security income protectively filed on March 12, 2012, the claimant is not disabled under section 1614(a)(3)(A) of the Social Security Act.

(Tr. 91.)

---

[3] Bell's Palsy is "paralysis, usually unilateral, of the facial muscles, caused by dysfunction of the 7th cranial nerve; probably due to a viral infection; usually demyelinating in type." *Stedman's Medical Dictionary* 1301 (27th ed. 2000).

## III. Applicable Law

### III.A. Standard of Review

The decision of the Commissioner must be affirmed if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). Substantial evidence is less than a preponderance of the evidence, but enough that a reasonable person would find it adequate to support the conclusion. *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001). This "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the Commissioner's findings." *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (internal quotation marks and citation omitted). "Substantial evidence on the record as a whole . . . requires a more scrutinizing analysis." *Id.* (internal quotation marks and citations omitted).

To determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole, the Court must review the entire administrative record and consider:

1. The credibility findings made by the ALJ.

2. The plaintiff's vocational factors.

3. The medical evidence from treating and consulting physicians.

4. The plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments.

5. Any corroboration by third parties of the plaintiff's impairments.

6. The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairment.

*Stewart v. Secretary of Health & Human Servs.,* 957 F.2d 581, 585-86 (8th Cir. 1992) (internal citations omitted). The Court must also consider any evidence which fairly detracts from the Commissioner's decision. *Coleman*, 498 F.3d at 770; *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999). However, even though two inconsistent conclusions may be drawn from the evidence, the Commissioner's findings may still be supported by substantial evidence on the record as a whole. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) (citing *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000)). "[I]f there is substantial evidence on the record as a whole, we must affirm the administrative decision, even if the record could also have supported an opposite decision." *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992) (internal quotation marks and citation omitted). *See also Jones ex rel. Morris v. Barnhart*, 315 F.3d 974, 977 (8th Cir. 2003).

### III.B.  Determination of Disability

A disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education and work experience engage in any other kind of substantial gainful work which exists … in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the

regulations. 20 C.F.R. § 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 343 F.3d 602, 605 (8th Cir. 2003). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id*. § 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141, 107 S.Ct. 2287, 2291 (1987). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on her ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless

of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(4). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see* 20 C.F.R. § 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id.* If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id*. § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his or her age, education, and work experience. *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n.5 (8th Cir. 2000). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the

national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. § 416.920(a)(4)(v). At Step Five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

The evaluation process for mental impairments is set forth in 20 C.F.R. §§ 404.1520a, 416.920a. The first step requires the Commissioner to "record the pertinent signs, symptoms, findings, functional limitations, and effects of treatment" in the case record to assist in the determination of whether a mental impairment exists. *See* 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1). If it is determined that a mental impairment exists, the Commissioner must indicate whether medical findings "especially relevant to the ability to work are present or absent." 20 C.F.R. §§ 404.1520a(b)(2), 416.920a(b)(2). The Commissioner must then rate the degree of functional loss resulting from the impairments in four areas deemed essential to work: activities of daily living, social functioning, concentration, and persistence or pace. *See* 20 C.F.R. §§ 404.1520a(b)(3), 416.920a(b)(3). Functional loss is rated on a scale that ranges from no limitation to a level of severity which is incompatible with the ability to perform work-related activities. *See id.* Next, the Commissioner must determine the severity of the impairment based on those ratings. *See* 20 C.F.R. §§ 404.1520a(c), 416.920a(c). If the impairment is severe, the Commissioner must determine if it meets or equals a listed mental disorder. *See* 20 C.F.R. §§ 404.1520a(c)(2), 416.920a(c)(2). This is completed by comparing the presence of medical findings and the rating of functional loss against the paragraph A and B criteria of the Listing of the

appropriate mental disorders. *See id.* If there is a severe impairment, but the impairment does not meet or equal the listings, then the Commissioner must prepare an RFC assessment. *See* 20 C.F.R. §§ 404.1520a (c)(3), 416.920a (c)(3).

## IV. Discussion

Douglas argues that the ALJ erred in failing to find that Douglas met the Grids due to his advanced age, lack of transferable skills, and combination of impairments. Douglas also contends that the ALJ never assessed his RFC. (Doc. 14 at 6.)

The ALJ in this case found that Douglas did not have a severe impairment or combination of impairments at step two of the sequential evaluation. The sequential evaluation process ends at step two if the impairment has no more than a minimal effect on the claimant's ability to work. *Kirby v. Astrue,* 500 F.3d 705, 707 (8th Cir. 2007); *Hudson v. Bowen,* 870 F.2d 1392, 1396 (8th Cir. 1989). Thus, Douglas' claims that the ALJ erred by failing to assess his RFC at step four and failing to apply the Grids at step five of the sequential evaluation process are misplaced.

Douglas also argues that the ALJ did not fully consider all of his impairments, specifically his peripheral neuropathy, chronic headaches, dysphagia,[4] emphysema, and memory difficulties. The undersigned will therefore construe Douglas' argument as a challenge to the ALJ's step two determination.

The claimant bears the burden of proving the severity of an impairment or combination of impairments. *Kirby*, 500 F.3d at 707. "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Id.*; *see also* 20 C.F.R §§ 404.1520(c), 416.920(c). Being able to do basic work activities means having the abilities and aptitudes necessary to do most jobs, including physical

---

[4]Difficulty swallowing. *Stedman's* at 599.

functions; capacities for seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, coworkers and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1521(b); 416.921(b). Although severity is not an onerous requirement to meet, it is also "not a toothless standard." *Kirby*, 500 F.3d at 708.

A diagnosis of a given impairment does not, on its own, indicate that the impairment is severe. *Buckner v. Astrue*, 646 F.3d 549, 557 (8th Cir. 2011) ("[A]lthough [Plaintiff] was diagnosed with depression and anxiety, substantial evidence on the record supports the ALJ's finding that his depression and anxiety was not severe.").

Considering the record as a whole, the Court concludes that substantial evidence supports the ALJ's finding that Douglas' physical and mental impairments, considered individually or in combination, were not severe during the alleged disability period.

As an initial matter, although the ALJ found that Douglas suffered from non-severe anxiety, Douglas argues that he "never alleged that his anxiety and depression were what he felt caused him to be disabled." (Doc. 14 at 8.) Rather, Douglas contends that his "impairments are physical." *Id.* Because Douglas does not dispute that he does not suffer from a severe mental impairment, the undersigned will limit the discussion herein to Douglas' physical impairments.

The ALJ found that the objective medical evidence does not fully corroborate Douglas' allegations. (Tr. 81.) The ALJ pointed out that the bulk of the evidence of record is comprised of remote prison records, spanning from 1992 through 2007, and predating the alleged onset date by about five years. *Id.* The ALJ discussed the medical records from the relevant period, which reveal that Douglas presented to the emergency room of Lake Regional Health System on March 14, 2012, with reports that he had slipped and fallen in his kitchen the previous evening. (Tr. 84,

347.) He complained of a headache, but had no blurred vision or loss of function in his arms or legs. *Id.* Douglas reported a history of possible stroke in 1998. (Tr. 348.) Upon physical examination, Douglas was in no apparent distress, no neurological deficits were found, and he was alert and oriented. (Tr. 348.) Douglas underwent a CT scan of the head, which showed no acute findings. (Tr. 349.) The CT scan noted probable asymmetric atrophy involving the right temporal lobe with a benign arachnoid cyst. (Tr. 351.) He was diagnosed with a scalp laceration and mild closed head injury, and was discharged. (Tr. 349.)

Douglas presented to Lake Convenience Clinic on March 16, 2012, with complaints of stiffness on his left lower side after falling and spraining his hand three to four days prior. (Tr. 366.) He was prescribed pain medication. *Id.* Douglas returned to the clinic on April 17, 2012, with complaints of left finger numbness, and pain in his left knee, hip, and back. *Id.* He was diagnosed with lumbar spine strain and was given an injection and medication for pain. *Id.*

On May 14, 2012, Douglas presented to James J. Neill, M.D. with complaints of difficulty walking, pain in the left side of his body, left foot pain and inability to lift his toes up, headaches, and occasional blurred vision in the left eye since his March fall. (Tr. 357.) Upon examination, Douglas was in no acute distress but was moderately anxious; was alert and oriented; was generally quite tremulous with nonrhythmic shaking of the hands and lower extremities and head; some left foot weakness to dorsiflexion was noted; his gait was grossly normal; he had grossly normal strength and sensation of the bilateral upper extremities; and his cranial nerves were grossly intact. (Tr. 357-58.) Dr. Neill diagnosed Douglas with drop foot,[5] headaches, essential and other specified forms of tremor, anxiety, and hyperlipidemia. (Tr. 358.) Dr. Neill noted that the cause of Douglas' "constellation of neurologic symptoms" was unclear. *Id.* He stated that

---

[5]Partial or total inability to dorsiflex the foot, as a consequence of which the toes drag on the ground during walking unless a steppage gait is used. *Stedman's* at 756.

Douglas' anxiety was likely playing a significant role in his symptoms, including tremulousness. *Id.* Dr. Neill started Douglas on anxiety medication and referred him to a neurologist for evaluation of his drop foot and headaches. *Id.*

Douglas presented to Dennis A. Velez, M.D., for a consultative neurological examination at the request of the state agency on August 4, 2012. (Tr. 371-77.) Douglas complained of headaches, vertigo, vision changes, deafness, muscle pain, limitation of motion, weakness, chest pain, syncope, leg pain when walking, polyuria, paresthesias, difficulties with memory, poor muscular coordination, emotional problems, shortness of breath, wheezing, cough, nausea, and diarrhea. (Tr. 373.) Douglas reported that his hearing problems started in the last several years, his shortness of breath started in 1986, and his stomach problems began in the 1970s. (Tr. 372.) Douglas used to work as a laborer but last worked in January 2012. *Id.* Douglas reported that he had been smoking a package of cigarettes a day for forty years, and his typical day consisted of watching television, working in the yard, and caring for his garden. *Id.* Douglas was described as alert, in no acute distress, ambulating without assistive devices, well nourished, and well dressed. (Tr. 374.) Upon examination, Douglas' visual acuity was 20/20 bilaterally, there was no clinical evidence of chest pain or shortness of breath, no wheezing or coughing was noted, no edema of the extremities was observed, he had good concentration and thought process, his gait was normal, he had full strength in both upper and lower extremities, his sensory examination was normal, his straight leg raise test was negative, his reflexes were normal, he could walk on his heels and toes, he could tandem walk with some difficulty, and he could get up and down from the exam table and squat and rise from that position with ease. (Tr. 374-76.) Dr. Velez made the following findings regarding Douglas' allegations: (1) vision problems: normal vision examination and no functional limitations; (2) hearing problems: he could understand

conversational speech and had no findings on cranial nerve examination; he may have some occupational hearing loss but it does not appear sufficient to have an effect on his quality of life at this time; (3) spine problems: no tenderness to palpation, no limitations on range of motion, and no motor or sensory findings; (4) stomach problems and possible ulcers: totally benign examination and no records to substantiate treatment for this, therefore cannot substantiate this is causing functional problems; (5) memory problems: although it is possible Douglas could have processing difficulties related to the fall, there was nothing to substantiate this based on the examination; and (6) breathing problems: Douglas reported this occurred in the 1980s; his lung examination was normal and he does not appear short of breath, nor is he on oxygen or any type of medication for this. (Tr. 376-77.) Dr. Velez concluded that, based on Douglas' "statements, history obtained, medical records reviewed as well as my findings and clinical examination this claimant does not have any limitations with sitting, standing, or walking, manipulative limitations, lifting or carrying limitations or any verbal or written communication problems." (Tr. 377.) Dr. Velez' diagnosis was "no significant findings on clinical examination today." *Id.*

Douglas argues that the ALJ failed to consider the peripheral neuropathy, chronic headaches, and memory difficulties he suffers as a result of the strokes and falls he has experienced. As the ALJ noted, even the medical records dated prior to Douglas' alleged onset of disability do not reflect any diagnostic imaging showing evidence of a stroke. (Tr. 82, 383-680.) Rather, Douglas' prison records reveal a diagnosis of right-sided facial nerve palsy in January 1999. (Tr. 82, 463.) There was no imaging showing evidence of a stroke, and later records reveal that, although Douglas had a possible stroke, he had no residual limitations. (Tr. 82.)

The ALJ discussed Douglas' allegation that he was disabled due to the residual effects of a head injury sustained in March 2012. (Tr. 80-81.) The ALJ noted that there was evidence of a

cyst but no evidence of any acute intracranial process, and that the most recent physical examination in August 2012 revealed Douglas was physically and neurologically completely normal, with no apparent deficits in sitting, standing, walking, lifting, carrying, seeing, hearing, memory, or comprehension. (Tr. 86, 377.)

As to Douglas' headaches, the ALJ noted that Douglas reported chronic headaches to Dr. Neill, but has not followed up or met with a neurologist as suggested. (Tr. 86-87.) Douglas did not complain of headaches to Dr. Velez during his August 2012 examination. (Tr. 87, 371-77.) In addition, Douglas was not taking prescription pain medication at the time of the hearing. (Tr. 87, 109.)

The ALJ concluded that there was no evidence to show that there were any residual effects from Douglas' fall in March 2012, much less a longitudinal record establishing the twelve month durational requirement for severity. *Id.* This finding is supported by the record discussed above, specifically Dr. Velez' normal neurological examination.

The ALJ also discussed Douglas' allegations of dysphagia. (Tr. 82.) She noted that Douglas complained of dysphagia while he was in prison and was treated with medication, such as Zantac.[6] (Tr. 608.) In December of 2003, an EGD revealed evidence of grade 1 esophagitis,[7] which was treated with Prilosec.[8] (Tr. 604.) The ALJ stated that there is no additional evidence of ongoing treatment for dysphagia. (Tr. 82.) Thus, the ALJ properly found this condition was non-severe.

---

[6] Zantac is a histamine-2 blocker indicated for the treated of GERD. *See Physician's Desk Reference ("PDR")*, 1144-46 (70th Ed. 2016).
[7] Inflammation of the esophagus. *Stedman's* at 670.
[8] Prilosec is a proton pump inhibitor that is indicated for the treatment of GERD. *See* WebMD, http://www.webmd.com/drugs (last visited August 8, 2016).

As to Douglas' allegations of breathing difficulties from emphysema and a tumor in his right lung, the ALJ stated that Douglas has not had ongoing breathing difficulties or sought treatment for pulmonary issues outside a period in the 1990s. (Tr. 83-84, 435-43.) Dr. Velez found in August 2012 that Douglas had a normal lung examination with no shortness of breath. (Tr. 86, 377.) In fact, Douglas reported to Dr. Velez that his shortness of breath "has for the most part [] gone away." (Tr. 372.) He denied any shortness of breath that day, had never been on oxygen, and had never used any inhaler or any other type of medication for this impairment. *Id.* Dr. Velez concluded that this problem had not presented functional limitations. *Id.* The ALJ, therefore, properly concluded that Douglas did not have a severe pulmonary impairment.

With regard to Douglas' spinal impairments, the ALJ noted that imaging Douglas underwent in prison in 1992 revealed a congenital variation at L5 with evidence of spina bifida and mild facet arthropathy at L5-S1. (Tr. 82, 389.) Douglas was prescribed medication for back pain. (Tr. 390.) Prison records dated February 17, 1997 note that Douglas reported that he injured his back in a motor vehicle accident in February 1996, when he was released from prison. (Tr. 82, 408-09.) Douglas underwent x-rays, after which he was diagnosed with a minimal compression deformity at T8 that did not appear to be acute. (Tr. 409.) In July 1997, Douglas was diagnosed with chronic back pain with "evidence of marked subjective exaggeration and overreaction." (Tr. 422-23.) As previously noted, Dr. Velez found no spinal abnormalities on examination in August 2012. (Tr. 376.) Douglas had no tenderness to palpation, no limitations of range of motion, no motor or sensory findings, and negative straight leg raise test. *Id.* The ALJ stated that this examination indicates no ongoing musculoskeletal impairment, or any associated restrictions or limitations. (Tr. 83.) She therefore concluded that Douglas' history of mild degenerative joint disease in the lumbar spine, with congenital changes and a history of a

minimal compression fracture are non-severe.   The ALJ's finding is supported by substantial evidence.

Contrary to Douglas' claim, the above discussion reveals that the ALJ fully evaluated each of Douglas' alleged impairments and found that they were not severe.   In making this determination, the ALJ also discussed relevant credibility factors and found that Douglas' allegations of disabling symptoms were less than credible.   (Tr. 89-90)   Credibility questions are "primarily for the ALJ to decide, not the courts."   *Baldwin v. Barnhart*, 349 F.3d 549, 558 (8th Cir. 2003).   "If an ALJ explicitly discredits the claimant's testimony and gives good reasons for doing so, the Court should defer to the ALJ's credibility determination."   *Gregg v. Barnhart*, 354 F.3d 710, 713 (8th Cir. 2003).

In assessing the credibility of Douglas' subjective complaints, the ALJ first noted that Douglas received infrequent and conservative treatment for his various impairments, and did not take any prescription pain medication at the time of the hearing.   *See Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012) ("If an impairment can be controlled by treatment or medication, it cannot be considered disabling") (quoting *Brown v. Astrue*, 611 F.3d 941, 955 (8th Cir. 2010)); *see also Milam v. Colvin*, 794 F.3d 978, 985 (8th Cir. 2015) (finding substantial evidence of claimant's relatively conservative treatment history and long periods of time without any treatment supported the ALJ's discount of a claimant's subjective complaints of pain); *Ostronski v. Chater*, 94 F.3d 413, 419 (8th Cir. 1996) ("[Claimant's] complaints of disabling pain and functional limitations are inconsistent with her failure to take prescription pain medication or to seek regular medical treatment for her symptoms.").

Second, the ALJ found that Douglas' daily activities undermined the credibility of his allegations of disabling functional limitations.   Douglas reported that he lived alone and

performed household chores, prepared meals, and shopped for groceries. (Tr. 89, 110-12). In addition, Douglas reported to Dr. Velez that he spent his days watching television, working in the yard, and caring for his garden. (Tr. 373.) *See Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996) (affirming ALJ's discount of claimant's subjective complaints of pain where claimant was able to care for one of his children on a daily basis, drive a car infrequently, and go grocery shopping occasionally).

Third, the ALJ noted that no treating sources have imposed any permanent restrictions on Douglas. (Tr. 90.) *See Brown v. Chater,* 87 F.3d 963, 965 (8th Cir. 1996) (lack of restrictions by treating physician supports ALJ's determination that plaintiff was not disabled).

Finally, the ALJ pointed out that Douglas worked with most of his impairments for an extended length of time, such as any effects from his possible stroke in 1998, his spinal impairments, his hearing loss, his stomach problems, and his breathing difficulties. (Tr. 90, 107-08.) Douglas testified that he worked driving a fork truck from the time he was released from prison in 2007 until he was laid off in 2012. (Tr. 107.) That a claimant works with an impairment for years "demonstrate[s] the impairments are not disabling in the present" absent evidence of significant deterioration of his condition. *Goff v. Barnhart,* 421 F.3d 785, 792–93 (8th Cir. 2005); *Cagle v. Astrue,* No. 1:09 CV 40 HEA/MLM, 2010 WL 1539111, at *9 (E.D. Mo. Mar. 30, 2010). In addition, the ALJ noted that Douglas only stopped working in January of 2012 because the business closed. The ALJ properly considered the fact that Douglas stopped working for reasons other than his alleged disability when assessing his credibility. *See Kelley v. Barnhart*, 372 F.3d 958, 961 (8th Cir. 2004) (claimant's leaving work for reasons unrelated to medical condition detracted from credibility); *Depover v. Barnhart*, 349 F.3d 563, 566 (8th Cir. 2003) (claimant left his job because the job ended; therefore, not unreasonable for the ALJ to find

that his suggested impairments were not as severe as he alleged).

For the reasons discussed above, the undersigned finds that the ALJ's decision that Douglas does not have an impairment or combination of impairments that significantly limits his ability to perform basic work activities is supported by substantial evidence in the record as a whole.

Accordingly, Judgment will be entered separately in favor of Defendant in accordance with this Memorandum.

**s/** Abbie Crites-Leoni  
ABBIE CRITES-LEONI  
UNITED STATES MAGISTRATE JUDGE

Dated this 23rd day of September, 2016.